**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**William C. POTTER, D.V.M.,
Defendant–Appellant.**

**No. 99–6047.**

United States Court of Appeals,
Sixth Circuit.

Jan. 3, 2001.

Merritt, Circuit Judge, concurred in part, and dissented in part.

Before MERRITT, NELSON and BATCHELDER, Circuit Judges.

PER CURIAM.

Steroid-type drugs are frequently used to increase the strength of horses. The defendant, Dr. William Clayton Potter, D.V.M., a licensed veterinarian, was convicted of knowingly or intentionally distributing steroid-type drugs outside the usual course of his professional practice in violation of 21 U.S.C. § 841(a). *See also* 21 C.F.R. § 1306.04. He appeals his conviction mainly on grounds that the evidence is insufficient and that the district court erred by allowing the government's experts to introduce Kentucky statutes and ethical standards relating to the practice of veterinary medicine in Kentucky, and he appeals his sentence on grounds that the quantity of drugs counted against him under the Sentencing Guidelines was excessive.

Twenty-two years ago in *United States v. Kirk*, 584 F.2d 773, 784 (6th Cir.1978), we set out the legal standard required for a violation by doctors of the drug distribution statute:

While physicians are exempt from the provisions of the drug abuse statutes when they dispense or prescribe controlled substances in good faith to patients in the regular course of professional practice, they are liable for prosecution under § 841 ... "when

their activities fall outside the usual course of professional practice." *United States v. Moore*, 423 U.S. 122, 124, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975).

■ Numerous counts of the indictment charge the defendant with illegally selling steroids to Rodney Morgan, and he was the first witness who testified about buying various steroids from the defendant. Morgan testified that he frequently bought steroids from the defendant for four years for himself and not for any animal, sometimes purchasing several bottles eight or nine times a month. Morgan testified that he did not have any conversations with the defendant about what the large volume of steroids would be used for, nor did the defendant ask him what kind of animal they would be used for. During this four year period of time Morgan himself was lifting weights and "bulking up" from a weight of 120 to a weight of more than 200. He testified that it was obvious to anyone, including the defendant, who looked at him over that period of time that he was gaining a lot of weight as a result of building his muscles through weight lifting. Based on Morgan's testimony, the jury was entitled to conclude that the defendant was guilty of the Morgan counts.

■ The next witness who testified about buying steroids from the defendant was Gary Wayne Riley who himself had been convicted of distribution of steroids. He testified that he bought steroids over a period of approximately 2–½ years from the fall of 1994 until the spring of 1997, often purchasing steroids from the defendant several times a month. His brother had purchased steroids from the defendant before that time and used the steroids for increasing the strength and size of fighting cocks. Potter's defense to this set of transactions was that Riley was buying the large quantity of steroids to administer to the fighting cocks. When asked about this defense, Riley testified:

Q: Based upon your experience, how many chickens would you have to have if all the steroids that you bought were going to the chickens?

A: There is not enough space in the State of Kentucky.

Q: Not enough space in the State of Kentucky?

A: Not for that many chickens.

Riley's testimony was sufficient to convict the defendant of the counts charging illegal sales to Riley.

■ The last witness who testified about purchasing steroids from the defendant was James G. Bertrand, Jr. of Baton Rouge, Louisiana, who purchased steroids from the defendant every two to three months for four years beginning in February 1993. Despite these frequent purchases, Dr. Potter never examined any of the horses for which he prescribed the steroids during this period. Bertrand testified that he was a horse trainer and used the steroids for treatment of his horses except on a few occasions when he sold steroids to an acquaintance for use in body building. The evidence is sufficient on the Bertrand count because the jury was entitled to find that the defendant did not carefully check to see what Bertrand was using the steroids for and did not follow the "usual course of professional practice" in making sure that the steroids would be given to animals, not people.

Taking this evidence in the light most favorable to the government, as we must, it allows the jury to find beyond a reasonable doubt that the transactions with Morgan and Riley and Bertrand "fall outside the usual course of professional practice." The defendant had no reasonable basis for believing that the sales to Morgan and Riley were being used to strengthen animals and he sold steroids to Bertrand

without following usual procedures to insure against human use. Thus we uphold the convictions on the Morgan, Riley and Bertrand counts.

The defendant also complaints that the testimony of Dr. Schmidt, the government's veterinary expert, should not have been admitted in part because the expert was allowed to testify or imply that in her opinion the defendant violated Kentucky statutory law regulating the veterinarian-client relationship. Our review of the record fails to find any such inadmissible testimony from Dr. Schmidt. Moreover, we believe that any objection or problem with Dr. Schmidt's testimony was waived when defense counsel expressly agreed with the way Judge Russell intended to handle Dr. Schmidt's testimony. Judge Russell told counsel at a side bar conference that he would say to the jury the following:

> You will hear evidence of the Kentucky statutes, the ethical codes, this information is provided to you ... for whatever weight you believe it deserves concerning the usual course of a veterinarian medical practice.

> Defendant is not on trial for the violation of any Kentucky statute or ethical code. You may consider this evidence as it relates to the charges against the defendant in this case. These statutes and ethical codes are not law you must follow in this situation, they are only offered as evidence, are entitled only to the weight you wish to give them.

Immediately after Judge Russell told counsel that he intended to so advise the jury counsel for the defendant then said:

> Your Honor, we think that admonition proper and we withdraw our previous objections and suggest that the phrased proposal you just read and the admonition given we have no objection.

During Dr. Schmidt's testimony the defendant's trial counsel put a copy of the statute up on a television monitor so that the jury could see it. On cross-examination, Judge Russell again admonished the jury that evidence of a violation of Kentucky statutes or ethical codes did not establish a violation of the federal statute. Counsel for the defendant did not object to the instructions as given by the court, and we regard counsel's conduct in respect to Dr. Schmidt's testimony as a waiver of any objection. Hence we conclude that the defendant's assignment of error regarding the way the trial court handled Dr. Schmidt's testimony cannot be sustained.

■ In this appeal, Potter contends that his sentence was improperly calculated because it was based on the total quantity of steroids sold to Bertrand. He argues that because 90% of the steroids Bertrand purchased were actually used for the legitimate purpose of treating Bertrand's race horses, only the small portion of those steroids that were illegally used should have been counted to calculate the appropriate level under the guidelines. However, Potter's contention is without merit. Potter was convicted of the crime of intentional distribution of steroids outside the usual course of his professional practice. Because Potter never examined the horses for which he prescribed these drugs yet regularly sold steroids to Bertrand–whose horses were primarily housed and raced outside the state of Kentucky–the sentencing judge did not err in concluding that the preponderance of the evidence established that all the steroids sold to Bertrand were distributed outside the usual course of veterinary practice and therefore violated the federal law under which Potter was convicted. We thus conclude that all of the steroids sold to Bertrand were properly included in the total quantity of drugs distributed for sentencing purposes.

Accordingly, the judgment of the District Court is affirmed.

Judge Merritt dissents on the Bertrand counts in light of the fact that Bertrand used the steriods for horses, not people, and was in the business of training and racing horses at tracks across the country. He would reverse the convictions on the Bertrand counts and would remand for resentencing. He otherwise concurs in the Court's opinion.